IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARL BARRETT,

                                                       OPINION AND ORDER
                       Plaintiff,

                                           12-cv-24-bbc

         v.

LAVERNE WALLACE, SHAWN GALLINGER,
DONALD HANDS, KEVIN KALLAS, RICK
RAEMISCH, PETER HUIBREGTSE, LYNDA
SCHWANDT, CRAIG TOM, MICHAEL HANFELD,
SCOTT RUBIN-ASCH, STACEY HOEM,
WILLIAM BROWN and LEBBEUS BROWN,[1]

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Carl Barrett, currently incarcerated at the Waupun Correctional Institution, is proceeding in forma pauperis in this case on claims that defendant prison officials violated his rights under the Eighth Amendment in several ways while he was incarcerated at the Wisconsin Secure Program Facility.  In the August 24, 2012 order screening the claims in plaintiff's second amended complaint, I summarized plaintiff's claims as follows:

> (1) Defendants Lavern Wallace and Shawn Gallinger failed to take measures to prevent him from harming himself on October 4, 2010, despite the fact they knew he was suicidal;

---

[1] The caption has been amended to include first names for several of the defendants, as provided by defendants, as well as the proper spelling of defendant Rubin-Asch's last name.

(2) Defendants Stacey Hoem, William Brown, Lebbeus Brown and Gallinger used excessive force against plaintiff on September 21, 2010 and on January 26, 2011, regarding cell extractions in response to suicide attempts on those dates;

(3) Following plaintiff's acts of self-harm, defendants Lynda Schwandt, Craig Tom and Michael Hanfeld punished him with segregation, an extension of his sentence and conduct reports for behavior caused by his mental illness and medications, which exacerbated his mental illnesses.

(4) Defendants Don Hands, Kevin Kallas, Rick Raemisch, Scott Rubin-Asch and Peter Huibregtse were responsible for maintaining Department of Corrections policies at the Wisconsin Secure Program Facility causing these violations.

Currently before the court are cross-motions for summary judgment.  After considering the parties' submissions in support of these motions, I will grant defendants' motion with respect to all of plaintiff's claims except his claims that (1) defendants Wallace and Gallinger failed to protect him from harming himself on October 4, 2010; and (2) defendant William Brown used excessive force against plaintiff on September 21, 2010 by firing a second round of pepper spray at him and defendants Hoem and Gallinger did nothing to stop William Brown.[2]  Plaintiff's motion for summary judgment will be denied in its entirety.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed, unless otherwise noted below.  (Plaintiff did not provide proposed findings of fact in support of his own motion for summary judgment, but has

---

[2] Because there are two defendants with the last name "Brown," I will refer to them by their full names.

provided proposed findings in response to defendants' motion.  I will use the set of proposed findings filed in deciding defendants' motion in ruling on both cross-motions.)

## UNDISPUTED FACTS

### A. <u>August 17, 2010 Psychiatric Appointment</u>

Plaintiff Carl Barrett was confined at the Wisconsin Secure Program Facility from May 12, 2006 until April 27, 2011.  He saw Dr. Knuppel on August 17, 2010.  Knuppel listed his diagnoses of plaintiff's mental problems as including "mood disorder not otherwise specified (chronic irritability, history of depression)" and "[d]yssomnia not otherwise specified."  Knuppel described plaintiff's mood as "irritable," but "without delusions" and with "no evidence of suicidal ideation or hopelessness."  He considered increasing plaintiff's dosage of Doxepin back to where it had been earlier, but was also skeptical whether plaintiff's Citalopram was actually helping him.  Despite these questions, he did not change the prescription dose at that time.

### B. <u>September 21, 2010 Incident</u>

On September 21, 2010, defendant Stacey Hoem was called to the Foxtrot Unit by Sergeant Bloyer to speak with plaintiff.  When Hoem arrived on the unit, Sergeant Bloyer stated that plaintiff was upset about having a camera in his cell and not being allowed to move to a cell that had no camera.  Plaintiff had a towel covering the window in his cell door.  Multiple times, Hoem asked plaintiff to tell her what was going on, but he refused to

come over to the door and speak with her. Plaintiff made comments about staff "wanting to play" and that he would play. Plaintiff came over to the door and pulled back the towel two times to show Hoem a pile of pills in his hand.

Plaintiff appeared to ingest the pills in his hand. Hoem overheard water falling on the floor and noticed some leaking out the front door. Plaintiff refused to speak with Hoem besides saying "no" and making comments about staff's "wanting to play." Defendant Lieutenant William Brown was called to plaintiff's cell front. William Brown instructed plaintiff to uncover his window so that he could talk to him. Plaintiff uncovered his window and informed William Brown that he was doing this because staff had refused to move him to a cell without a camera. William Brown talked with plaintiff for approximately five minutes at his cell front and explained to him that he was going to move him to Alpha unit because of his behavior. Plaintiff said he needed to get clinical services and that he was going to cause all kinds of problems. He then covered his window with a towel. William Brown instructed Sergeant Bloyer to contact clinical services. Sergeant Bloyer did so and informed Dr. Becker of the situation.

Also, William Brown instructed Correctional Officer Godfrey to get a "Mark 9," a type of device that dispenses incapacitating agents, and a ladder and go to the back of plaintiff's cell and attempt to observe him through the window in the back of his cell. William Brown then briefed defendant Captain Lebbeus Brown of the situation and received permission for use of force, to include incapacitating agents. William Brown then instructed Correctional Officers Eck, Ewing, and Karnopp and defendant Shawn Gallinger to begin

4

suiting up for a possible use of force.  William Brown instructed Correctional Officer McCollough to retrieve the video camera from the security suite.

Plaintiff continued to refuse to uncover his window, so William Brown radioed Officer Godfrey to apply incapacitating agents into the cell via the gas port at the rear of the cell.  Godfrey applied a one-second burst of "pepper spray/OC/CS gas" into the cell via the gas port.

After the pepper spray was administered, William Brown gave plaintiff several direct orders to uncover the window and comply with restraints, but plaintiff refused.  Correctional Officer Ewing then came to the cell front and gave plaintiff an order to uncover the window and comply to be restrained.  Plaintiff uncovered his window and lay on the floor, refusing to be restrained.  (Plaintiff states that he had passed out and was being intentionally noncompliant.)  William Brown told plaintiff that he needed to comply with movement from his cell or he would apply another application of incapacitating agents into the cell. Plaintiff continued to lie on the floor.  The top trap of his cell door was opened and William Brown applied a one-second application of pepper spray into the cell, striking plaintiff.  I understand from reading plaintiff's affidavit, dkt. #86 at ¶ 12, that plaintiff alleges that he was hit "near the head by some projectile shot by defendant Gallinger and Brown, W. Plaintiff adds that he "came to" at this point and then came to the door to be restrained and escorted to a holding cell.  Plaintiff was assessed as having taken an overdose of medication intentionally and was transferred to the Boscobel Area Health Care Center emergency room for further care and treatment.

5

Plaintiff was given conduct report #2136082 for this incident.  On October 4, 2010, defendant Craig Tom was the disciplinary hearing officer for ths conduct report (plaintiff did not attend this hearing because of an incident taking place earlier that day, which is described in more detail in the following paragraph).  Plaintiff was found guilty of the charges of disobeying orders, disruptive conduct and misuse of prescription medication.  He was found not guilty of disrespect.  He was ordered to program segregation for 360 days and required to pay restitution of $11,437.53 for his emergency visit to Boscobel Area Health Care.  Plaintiff appealed the hearing officer's decision to the warden.  The appeal was denied.

## C. October 4, 2010 Incident

On October 4, 2010, at approximately 9:40 a.m., defendants Sergeant Laverne Wallace and Gallinger notified Shana Becker, a psychologist in the Psychological Services Unit, that plaintiff stated that he had pills in his possession and planned to ingest them. (Plaintiff states that he used his emergency call button to call defendant Wallace as early as 8 a.m. to tell him that he had suicidal thoughts and was going to ingest pills, but Wallace told him he "wasn't calling anybody" and eventually stopped responding to plaintiff's calls. Plaintiff states also that Gallinger told him, "Go ahead and take [the pills], I don't care," which defendants deny.)  Wallace also called defendant William Brown and told him that plaintiff was threatening to ingest pills.

Beckett arrived at plaintiff's cell front.  Plaintiff appeared to ingest a handful of pills. When asked why he took the pills or what kind of pills they were, he would not answer any of the questions or participate in the assessment.  He turned away and then shut off his light.

6

Becker notified Wallace that plaintiff had ingested medication and he called the Health Services Unit.

William Brown reported to plaintiff's cell front and observed that plaintiff had appeared to use muscle rub cream to cover his window.  William Brown informed plaintiff that he had to uncover his windows to be removed from his cell for a medical assessment. Plaintiff refused to uncover his window and then began to kick his cell door extremely hard. William Brown informed plaintiff that he had a cell extraction team at his cell front and that incapacitating agents had been authorized if necessary to gain compliance.  In response, plaintiff cleared his cell window and complied with the restraint procedure and movement from his cell at 9:59 a.m.  Plaintiff was transported to the Boscobel Area Health Care emergency room for further evaluation.

Plaintiff was given conduct report #2154894 for this incident.  Defendant Michael Hanfeld found plaintiff guilty of disobeying orders and disruptive conduct charges.  He was found not guilty of damage or alteration of property and violations of institution policies and procedures charges.  Plaintiff was ordered to spend 360 days in program segregation and to pay restitution of $4,676.70 for his emergency visit to Boscobel Area Health Care.  Plaintiff appealed the disciplinary hearing officer's decision but the decision was upheld.


D. January 26, 2011 Incident

On January 26, 2011, plaintiff was seen at the cell front by Becker and another Psychological Services Unit staff member after he reported that he was going to ingest a

7

handful of medication.  Plaintiff had his windows and camera covered and refused to remove the coverings.  Plaintiff said that he had medication in his hand and was going to swallow it because he was sick of the way he was being treated.

The other staff member asked plaintiff to comply with coming out of his cell, at which time he said something vulgar.  She advised plaintiff that this was not appropriate and he responded with, "Well, I guess I'm not gonna come out then."  By this point, plaintiff was also being observed by Officers Govier and defendant Gallinger.  Gallinger saw him ingest medication.  The psychological services staff member notified defendant William Brown that plaintiff refused to comply and had been observed by Officer Gallinger ingesting medication.

William Brown directed Gallinger to apply pepper spray to the cell via the rear port of the cell.  Gallinger administered an approximate one-second application of pepper spray via the Mark 9 into the cell.  After approximately 15 seconds, plaintiff uncovered his cell door window and complied with movement from his cell.  Plaintiff was then escorted to the holding cell.  Plaintiff was transferred to the Boscobel Area Health Care center for further treatment.

On January 26, 2011, plaintiff was given conduct report #2212511.  On March 4, 2011, a disciplinary hearing was held for Adult Conduct Report #2212511.  Plaintiff was not present to provide a statement.  Plaintiff was found guilty of disobeying orders, disruptive conduct and misuse of prescription medication. He was found not guilty of violations of institution policies and procedures.  His mandatory release date was was extended by 40 days and he was ordered to pay restitution of $3,771.83 for his emergency visit to Boscobel Area Health Care.

E. Policies

There is no written mental health policy at the Wisconsin Secure Program Facility to keep mentally ill patients in disciplinary segregation or to prescribe psychotropic medications in dangerous amounts. It is the policy of the Department of Corrections to conduct a transfer and mental health screening process for inmates being considered for transfer to the prison. Inmates residing at other institutions who are identified as seriously mentally ill are not transferred to the prison. Inmates already at the prison who are suspected of developing serious mental illness undergo further clinical to determine the presence or absence of serious mental illness.

Because non-medical prison staff work are in direct and frequent contact with the prisoners, they are often the first to become aware of mental health problems or crises among inmates. Correctional officers have specific roles in such situations, such as gathering relevant information, insuring the immediate safety of the inmate, contacting supervisors and referring problems to medical or mental health staff. By administrative rule, security supervisors are authorized to place inmates in clinical observation status if clinical staff are not immediately available, although the security supervisors are required to notify psychology staff as soon as possible after placement. Correctional officers distribute medication to inmates. Correctional staff are trained to refer any crisis situations or mental health concerns to psychological services staff.

OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Indiana Grocery, Inc. v. Super Valu Stores, Inc.</u>, 864 F.2d 1409, 1412 (7th Cir. 1989).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  <u>Brummett v. Sinclair Broadcast Group, Inc.</u>, 414 F.3d 686, 692 (7th Cir. 2005).  If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper.  <u>Celotex</u>, 477 U.S. at 322.

A. <u>Failure to Exhaust</u>

Defendants argue that plaintiff has not exhausted any of his claims other than his claims against defendants Wallace and Gallinger for failing to prevent him from harming himself on October 4, 2010.  Defendants did not raise this argument until they filed their March 8, 2013 motion for summary judgment.  Plaintiff argues that defendants have waived this argument because they failed to file a stand-alone motion for summary judgment based on exhaustion grounds by the July 7, 2012 deadline set by the court in its May 29, 2012 preliminary pretrial conference order.  In the usual case, I might consider whether a several-month delay in filing such a motion constituted waiver.  However, under the unique facts of this case, I need not do so because defendants are not solely to blame for any confusion over the deadline in issue.  After the July 7, 2012 deadline was set by the court, plaintiff filed

10

his second amended complaint, greatly expanding the scope of the case.  The court issued its second screening order on August 24, 2012, after the exhaustion deadline had already passed, so it makes little sense to hold defendants to the earlier deadline.  I note further that shortly thereafter, plaintiff attempted to supplement his complaint again, but his motion to do so was denied in a December 12, 2012 order.  It is understandable that defendants may have been unsure about how and when to file dispositive motions with the claims still in flux.  Although better practice would have been for defendants to file a formal motion to extend the exhaustion deadline, under the circumstances I see no reason to penalize defendants by considering the exhaustion defense waived.

1. <u>Standard</u>

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The exhaustion requirement is mandatory, <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006), and "applies to all inmate suits."  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  The purpose of administrative exhaustion is not to protect the rights of officers, but to give prison officials a chance to resolve the complaint without judicial intervention. <u>Perez v. Department of Corrections</u>, 182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within

the administrative process," Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. In Wisconsin, the administrative code sets out the process for a prisoner to file a grievance and appeal an adverse decision. Wis. Admin. Code. § DOC 310.07 (prisoner first files grievance with inmate complaint examiner; prisoner may appeal adverse decision to corrections complaint examiner and then to department secretary). A failure to follow these rules may require dismissal of the prisoner's case. Perez, 182 F.3d at 535. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, defendant bears the burden of establishing that a plaintiff failed to exhaust his available remedies. Jones v. Bock, 549 U.S. 199, 216 (2007).


2. Discussion

Defendants point to plaintiff's inmate grievance history to show that he has not exhausted most of his claims. That history shows that plaintiff did not file an inmate grievance specifically regarding (1) the cell extractions on September 21, 2010 or January 26, 2011; (2) being placed in segregation; (3) being given conduct reports; and (4) having his sentence extended. Plaintiff argues that the extractions were addressed though grievance no. WSPF-2011-1360, dated January 13, 2011, in which plaintiff complained that "every

12

time I act out due to my mental illness, I'm punished for it."  Plaintiff filed another grievance, no. WSPF-2011-5483, dated March 18, 2011, in which he explained that he has mental health problems, has engaged in numerous acts of self-harm, needs "intensive therapy" and that staff is being deliberately indifferent to his mental health problems.

However, these grievances are far too vague to put prison officials on notice of the nature of the specific wrongs at issue.  Plaintiff did not name any individual as "punishing" plaintiff or using excessive force and he did not specify any action taken by a prison official to harm him.  In addition, the timing of the grievances do not make clear that plaintiff was writing about the conduct alleged here; the January 13, 2011 grievance came months after the first act of self- harm and weeks before the third.  The March 18, 2011 grievance came months after the third act of self-harm.  Because the grievances did not put prison officials on notice of defendants' conduct in this case, they did not serve to exhaust plaintiff's claims. McCoy v. Gilbert, 270 F.3d 503, 512 (7th Cir. 2001) (prisoner must have clearly given the institution notice of his particular demands and reasonably given the institution an opportunity to resolve them); see also Ammons v. Gerlinger, 2007 WL 5514719, *10 (W.D. Wis. 2007) (prisoner failed to exhaust administrative remedies in part by failing to provide enough information to alert prison officials to the nature of the wrong).

However, plaintiff's failure to file formal inmate grievances about this incident does not end the discussion.  Plaintiff argues alternatively that he was "not required, and in fact, prohibited" from filing an inmate grievance regarding incidents resulting in the issuance of conduct reports.  Under Wis. Admin. Code § DOC 310.08(2), inmates are not allowed to

13

use the inmate grievance system to raise "Any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303," and even then, such grievances are restricted to "challenge only the procedure used in the . . . disciplinary process."

I have stated in previous cases that prison officials may not tell prisoners that they should not or cannot use the grievance process and then later seek to dismiss a lawsuit on the ground that the prisoner failed to complete that process. Shaw v. Jahnke, 607 F. Supp. 2d 1005, 1009 (W.D. Wis. 2009). See also Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (dismissal not appropriate when prisoner failed to complete grievance process because he relied on information provided by prison officials). This is because "[t]he grievance process is not intended to be a game of 'gotcha' or a test of the prisoner's fortitude or ability to outsmart the system." Shaw, 607 F. Supp. 2d at 1010 (internal quotations omitted).

This case may be different from those previous cases because it does not appear that plaintiff attempted to file a formal inmate grievance that was later rejected on the grounds that the issues were part of the disciplinary process. Instead, I understand plaintiff to be arguing simply that the administrative provisions prohibited him from filing such a grievance in the first place, and thus there would be no point in doing so. He makes a reasonable point based on the plain wording of those regulations. Given the dearth of relevant case law discussing this problem, it would have been particularly helpful to get defendants' view of what plaintiff should have done to satisfy the exhaustion requirement while following the regulations. However, defendants do not provide any response to this argument. Given defendants' burden to show that plaintiff exhausted *available* administrative remedies, I

14

cannot grant their motion for summary judgment on the basis of the facts provided.  Bonte
v. U.S. Bank, N.A.,624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument
. . . results in waiver.").


B. Failure to Protect

To state an Eighth Amendment failure to protect claim, a prisoner must allege that
(1) he faced a "substantial risk of serious harm" and (2) the named prison officials acted with
"deliberate indifference" to that risk.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Brown
v. Budz, 398 F.3d 904, 909 (7th Cir. 2005).

The only failure to protect claim on which plaintiff was allowed to proceed was a
claim against defendants Wallace and Gallinger for failing to take measures to prevent him
from harming himself on October 4, 2010.  Defendants Wallace and Gallinger argue that
they were only "briefly involved" in the October 4 incident, and that they "simply notified
other DOC personnel that the plaintiff 'said' he had pills in his possession and he planned
to take them."  However, plaintiff's version of events is that Wallace ignored his emergency
calls from about 8 a.m. to about 9:40 a.m, that Wallace told him he "wasn't calling
anybody" to help plaintiff, and that Gallinger told him, "Go ahead and take [the pills], I
don't care," after which plaintiff ingested a handful of pills and was taken for medical
attention.

Construing all reasonable inferences in favor of plaintiff at this point in the
proceedings, I conclude that neither party is entitled to summary judgment on this claim;

plaintiff has raised disputed issues of fact about what occurred.  If the jury were to believe his version of events, in which defendants Wallace and Gallinger ignored his emergency calls and then practically dared plaintiff to overdose on medication, the jury could find that these defendants had failed to protect plaintiff.  It is the jury's role to determine which version of events it believes.

## C. Excessive Force

In determining whether an officer has used excessive force against a prisoner in violation of the Eighth Amendment, the question is  "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Whitley v. Albers, 475 U.S. 312, 320 (1986).  The factors relevant to making this determination include:

- the need for the application of force

- the relationship between the need and the amount of force that was used

- the extent of injury inflicted

- the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them

- any efforts made to temper the severity of a forceful response

Id. at 321.  In Hudson v. McMillan, 503 U.S. 1, 9-10 (1992), the Court refined this standard, explaining that the extent of injury inflicted was one factor to be considered, but the absence of a significant injury did not bar a claim for excessive force so long as the officers used more than a minimal amount of force.  Similarly, the Court of Appeals for the

16

Seventh Circuit has cautioned district courts not to dismiss claims simply because the defendant used a small amount of force; rather, the court must consider all of the relevant factors.  Washington v. Hively, 695 F.3d, 641, 642 (7th Cir. 2012).

The use of chemical agents is not a violation of the Eighth Amendment in and of itself.  They can be used in limited quantities when it is reasonably necessary to subdue or maintain control over an inmate.  Soto v. Dickey, 744 F.2d 1260, 1270-71 (7th Cir. 1984).  The use of such an agent violates the Eighth Amendment only if it is used "in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."  Id.  In general, the September 21, 2010 and January 26, 2011 incidents here seem to fit well within Soto; the pepper spray was administered in one-second bursts in an effort to extract a non-compliant prisoner out of the cell, which was especially important given the potentially harmful dose of medications he had taken in each incident.  Plaintiff does not provide any compelling evidence to support a different conclusion.  Thus I will grant defendants' motion for summary judgment on these claims and deny plaintiff's, with one exception.

That exception is the undisputed fact that during the September 21, 2010 incident, the second canister of pepper spray struck plaintiff on the shoulder.  Plaintiff also claims that he passed out after the first round and "came to" after being struck by the second canister.  At this point, I conclude that defendants' use of pepper spray in this manner against a possibly unconscious prisoner could be seen by a reasonable jury as excessive force.  Therefore both parties' motions for summary judgment will be denied on this portion of the

claim as it pertains to defendants William Brown (who fired the second round at plaintiff) and Hoem and Gallinger (who were present at the scene but did not act to stop William Brown). Defendants' motion will still be granted (and plaintiff's motion will be denied) as it pertains to defendant Lebbeus Brown, who authorized the use of incapacitating agents, because there is no indication that he instructed William Brown how to use them or that he told William Brown he should strike plaintiff with the canister.

D. Punishment

Plaintiff is proceeding on claims that defendants Lynda Schwandt, Craig Tom and Michael Hanfeld punished him with segregation, an extension of his sentence and conduct reports for behavior caused by his mental illness and medications, which exacerbated his mental illnesses. In the August 24, 2012 screening order in this case, dkt. #32, I explained the contours of these claims as follows:

> This claim could implicate the Eighth Amendment in two ways. First, plaintiff may mean to contend that punishment for behavior that he cannot control violates the Eighth Amendment. Robinson v. California, 370 U.S. 660, 667 (1962) (statute criminalizing being "addicted to the use of narcotics" violated Eighth Amendment because it is "an illness which may be contracted innocently or involuntarily"); Jones v. City of Los Angeles, 444 F.3d 1118 (9th Cir. 2006) (statute prohibiting homeless people from sitting, lying or sleeping on public streets and sidewalks violates Eighth Amendment because homeless people cannot avoid doing those things). Second, plaintiff may mean to contend that defendants disregarded his mental illness by placing him in segregation, which exacerbated his condition, rather than providing him mental health treatment. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (under Eighth Amendment, "mental health needs are no less serious than physical needs"); Jones 'El v. Berge, 164 F. Supp. 2d 1096, 1116 (W.D. Wis. 2001) (when conditions of confinement "are so severe and restrictive that they exacerbate the symptoms that mentally ill inmates exhibit," this may result in cruel and unusual punishment).

18

1. Punishment for behavior plaintiff cannot control

As I stated in the August 24, 2012 screening order, it is plaintiff's burden to show that he could not control his actions and that defendants *knew* this before imposing punishments. As defendants point out, plaintiff does not come close to doing so. Plaintiff does not point to anything in his medical records suggesting that he could not control his behavior. Even if he had, he presents nothing suggesting that defendants believed that to be true when they punished him. Therefore, I will grant defendants' motion for summary judgment regarding this claim and deny plaintiff's.

2. Exacerbation of mental illness

Similarly, in the August 24, 2012 screening order, I stated that in order to prevail on this claim, plaintiff would need to show that defendants knew that placing him in segregation would exacerbate his mental illness and that there were other reasonable steps they could have taken to provide him treatment. Defendants argue that plaintiff has failed to support this claim with relevant evidence. I agree; plaintiff has submitted almost no evidence to support this claim other than to assert without foundation that he and others in segregation receive too many psychotropic drugs and that his prison doctor showed concern in September 2010 over the dosage of his medications. However, plaintiff does not

19

explain his own history of mental illness, how segregation has exacerbated his mental illness, what treatment he should be getting beyond medication (or instead of it) or even whether defendants knew that segregation could harm him.  Even his reference to a September 2010 doctor's report shows that the doctor was considering several options, including *increasing* the dosage of one of his medications.  None of this evidence indicates how defendants acted with deliberate indifference by punishing him.  Because plaintiff has failed to set forth any evidence supporting this claim, I will grant defendants' motion for summary judgment regarding the claim and deny plaintiff's.

## E. Policy

Plaintiff brings a claim that defendants Don Hands, Kevin Kallas, Rick Raemisch, Scott Rubin-Asch and Peter Huibregtse were responsible for maintaining Department of Corrections policies at the Wisconsin Secure Program Facility causing the violations discussed above.  In his complaint, plaintiff alleged that unqualified correctional officers are required to dispense medications and to respond to inmates' mental health crises, which leads to poor results, as evidenced by the incidents discussed above.  However, as defendants point out, plaintiff has not adduced any evidence suggesting that the alleged Eighth Amendment violations that are going to trial had anything to do with Department of Corrections policies, whether formal written procedures or informal practices.  Plaintiff did not respond in his brief with any argument to rebut defendants' argument, thus effectively conceding it.  Bonte, 624 F.3d at 466.   Accordingly, I will grant defendants' motion for summary judgment on this claim and deny plaintiff's.

20

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Lavern Wallace, Shawn Gallinger, Stacey Hoem, William Brown, Lebbeus Brown, Lynda Schwandt, Craig Tom, Michael Hanfeld, Don Hands, Kevin Kallas, Rick Raemisch, Scott Rubin-Asch and Peter Huibregtse, dkt. #52, is GRANTED IN PART AND DENIED IN PART.  The motion is granted in all respects except as to plaintiff Carl Barrett's claims that

a. Defendant William Brown used excessive force against plaintiff on September 21, 2010 by firing a second round of pepper spray at plaintiff and defendants Hoem and Gallinger did nothing to stop him.

b. Defendants Wallace and Gallinger failed to protect plaintiff from harming himself on October 4, 2010.

2.  Plaintiff Carl Barrett's motion for summary judgment, dkt. #48, is DENIED.

3.  Defendants Lebbeus Brown, Schwandt, Tom, Hanfeld, Hands, Kallas, Raemisch, Rubin-Asch and Huibregtse are DISMISSED from the case.

Entered this 20th day of August, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

21